## PHILLIPS v. HOUSTON NAT. BANK, HOUSTON, TEX.

## In re GULFSTATES S. S. CO., Inc. No. 9019.

Circuit Court of Appeals, Fifth Circuit. Jan. 17, 1940.

J. C. Hutcheson, III., of Houston, Tex., for appellant.

A. Milton Vance and Meyer C. Wagner, both of Houston, Tex., for appellee.

Before FOSTER, SIBLEY, and Mc-CORD, Circuit Judges.

SIBLEY, Circuit Judge.

H. A. Phillips, as trustee in bankruptcy of Gulfstates Steamship Company, complains by this appeal that the referee, in allowing a claim against the bankrupt's estate of Houston National Bank for approximately $40,000, wrongly gave the claim a lien on a fund of $15,000 in the hands of the trustee which arose from the settlement of a charter party which the bankrupt held at the date of bankruptcy on a vessel owned by Anglo-Canadian Shipping Company. The district judge approved the referee's findings of fact and his conclusions of law.

The main facts found are that the bankrupt was engaged in chartering vessels, getting cargoes for them, and seeking profits from the freights earned. On Feb. 5, 1937, the charter party in question was executed on the vessel Beljeanne, the vessel to be delivered at an English port, and charterer to pay for fuel oil used thereafter. The vessel was delivered accordingly on June 20, 1937, and from the proceeds of a loan of $40,000 made by the Houston National Bank on June 15 for the purpose, the charterer paid $3,703 for fuel oil and $15,000 advance charter hire till July 25. The vessel then sailed for the port of Houston, where a cargo of scrap steel and iron was in contemplation to be carried to Japan. The note given the Bank for the $40,000 stated on its face that as security there had been delivered and pledged "Assignment of freight M/S Beljeanne". Accompanying the note was a lengthy formal document which recited the charter party on the Beljeanne, and to secure the indebtedness to the Bank it "transferred and assigned to the Bank, its successor or assigns, all freights charges and monies of any kind or character collected by or accruing to, or which may hereafter be collected by or accrue to the charterer by virtue of said charter party and the rights acquired by the charterer thereunder, and by virtue of any freight or cargo carried by said vessel upon the voyage contracted for." The accruing liens on freight and cargo were also assigned. If a cargo was not provided by charterer or on failure otherwise to comply with the charter obligations, the Bank was given the option but was under no obligation to assume to carry out the charter party itself. The president of the charterer was named a trustee to collect and pay over to the Bank the "monies assigned hereby." On July 3, 1937, the charterer contracted for the cargo, to be shipped at Houston. On July 10, 1937, occurred the bankruptcy of the charterer, and Phillips became receiver and later trustee. Although the charter hire was paid to July 25 the ship's owners did not wish her to enter the jurisdiction of the bankruptcy court and become entangled there, and negotiations were · undertaken on July 13. The bankruptcy court had not the means to carry out the charter. The receiver approached the Bank to see if it would advance necessary additional funds, estimated to be about $35,000 or $40,000, and it declined. The plan then was evolved that the vessel should be released to the owners on their repaying $15,000, and the cargo contract should be cancelled, leaving the way open for the owners to take their vessel and contract anew for the cargo. This was done under orders of the bankruptcy court on July 14, and the $15,000 was paid into court. The referee found, the judge approved, and there is evidence to support their finding, that the Bank agreed to the settlement with the vessel's owners but would fight out its rights in the $15,000 before the referee. As above stated the referee and judge held the Bank should be given a lien on this fund.

■ We agree. The assignment of the charter party was not a transfer of the entire contract to the Bank with its obligations assumed by the Bank. It was an effort to assign the monies to arise from the contract, with an option in the Bank to take over the contract and carry it out on failure of the assignor to carry on. As there were at the time of the assignment no such monies even contracted for, the freight contract being made weeks later, it is likely that the assignment transferred no legal title to anything, but since $40,000 had been paid for it equity would enforce it as an agreement to assign, so soon and so often as anything should come into being which was covered by it. The parties indeed did make an assignment of the freight contract when it was made, but since that contract was abrogated on July 14 by the Bank's consent no rights under it or to its proceeds are in question now. And the true question is whether anything more was intended to be assigned in the original transaction with the Bank.

The trustee contends that only the freights to be earned, and other monies due by reason of carrying out the charter party, were intended to be assigned; that the face of the note stated only that "freights" stood as security; that in the assignment paper the mention of "freights, charges, and monies of any kind or character collected or accruing * * * by virtue of said charter party and the rights acquired by Gulf Steamship Company thereunder," under the rule of ejusdem generis, must be restricted to freights, charges, and like things, accruing under the charter party; that monies received by the bankruptcy court in settling the charter party do not accrue "by virtue of" the charter party, but by virtue of the bankruptcy law, and are general assets of the estate. The referee found that the $15,000 fund, arising as it

did, was "money collected * * * by virtue of the charter party and the rights acquired thereunder," that ejusdem generis should not be applied, and that the fund did not arise from any power given the trustee under the bankruptcy Act but from the charter party, but for which and the rights under which it would never have been collectible.

■ The contract of assignment controls, and not the reference to it in the note. The rule of ejusdem generis is only a rule of construction to aid in ascertaining the true intention of a statute or contract, and never overrules an intention that is clear. It serves to prevent general words, loosely used in connection with specific terms, from extending the operation of the instrument into a field not really intended. Though it is plain here that the freights and charges to arise from operations under the charter party were primarily in mind, the words added "and monies of any kind or character collected" are not loosely used, but are well chosen to express a definite intention to include monies, not only ejusdem generis, but of any kind or character, if they shall be collected by virtue of the charter party and the rights acquired thereunder. It is true as argued that the phrase "by virtue of" means literally by force of, or by authority of; but it is not too great a stretch to make it equivalent to "by reason of." The two expressions were regarded as equivalents in a somewhat similar construction in United States v. Wm. Cramp & Sons Co., 206 U.S. 118, 27 S.Ct. 676, 51 L.Ed. 983. We think the $15,000 was collected by reason of the charter party and the rights which the bankrupt and the Bank had acquired thereunder. It is not important whether the charterer's bankruptcy had breached eo instanti the charter contract so far as it was executory, subject to be reinstated by the election of the trustee; or whether it stood in suspense till the trustee should elect. See Central Trust Co. of Illinois v. Chicago Auditorium Ass'n, 240 U.S. 581, 36 S.Ct. 412, 60 L. Ed. 811. The owners wished control of their ship at once and were willing to pay $15,000 to get it. The trustee in bankruptcy would have a right to adopt the charter party in a reasonable time, and the Bank also had a right to assume it. Though neither was really intending to exercise his right, the $15,000 was paid and collected by reason of or by virtue of these rights under the charter party. If the charterer before

bankruptcy had thus settled with the owners, or if he had transferred the charter party to another for $15,000, the money he so collected he ought to have turned over to the Bank. It would stand in place of what was parted with. The same result ought to follow when the bankruptcy court settles or transfers a contract in which another has rights. His rights are transferred to the fund.

While this precise situation may not have been in mind when the assignment was worded, the Bank was lending a large sum on the sole security of the fruits of this contract, and the words used indicate a purpose to pledge all the fruits of every sort. Much of what was said as to the general purpose of the contract in the case of United States v. Wm. Cramp & Sons Co., supra, applies here. We might mention also that the $15,000 paid back is just the charter hire which had been paid the owners and advanced by the Bank for that purpose. The settlement has the color of a rescission, that the ship owners might take over the voyage. There is equity in restoring on rescission the Bank as well as the bankrupt to its original position, as far as may be.

For all the reasons stated, the bankruptcy court as a court of equity did right in awarding the Bank a lien on this fund, and its judgment is affirmed.