IN THE SUPREME COURT OF TEXAS
















IN THE SUPREME COURT OF TEXAS

 

════════════

No. 02-0455

════════════

 

J. Hiram Moore, Ltd., Petitioner,

 

v.

 

Mary Greer, Respondent

 

════════════════════════════════════════════════════

On Petition for Review from the

Court of Appeals for the Thirteenth District
of Texas

════════════════════════════════════════════════════

 

 

Argued
October 29, 2003

 

 

Justice Owen, joined
by Justice Medina, dissenting. 

 

The granting clause of the royalty deed at issue
says that it conveys:

 

all
of the oil royalty, gas royalty, overriding royalty and royalty in casinghead gas, gasoline, and royalty in other minerals
. . . that may be produced from the following described lands
situated in the County of Wharton, State of Texas, to wit:

 

All
of that tract of land out of the AB 801 SEC
14/W M BARNARD #14 SURVEY, Wharton County, Texas known as the MEDALLION OIL
B SIXS FRELS UNIT.  Grantor agrees to execute any supplemental
instrument requested by Grantee for a more complete or accurate description of
said land.  Reference is made to this
unit(s) for descriptive purposes only and shall not limit this conveyance to
any particular depths or wellbores.  In addition to the above described lands, it
is the intent of this instrument to convey, and this conveyance does so
include, all of grantors [sic] royalty and overriding royalty interest in all
oil, gas and other minerals in the above named county or counties, whether
actually or properly described herein or not, and all of said lands are covered
and included herein as fully, in all respects, as if the same had been actually
and properly described herein.

 

This grant is unambiguous.  It purports to grant Greer’s interest in a
specific section of a specific survey, and it also purports to grant all of
Greer’s royalty interests in Wharton County, whether described in the deed or
not.  As it turns out, Greer does not own
what she purported to convey in the specific grant.  But she does own royalty interests in Wharton
County, and she unequivocally conveyed all those royalty interests in the
general granting section of this deed.  I
would give effect to this grant unless and until the deed is reformed or
rescinded.

The Court’s reasoning for failing to enforce the
deed as written boils down to this and only this:  “The deed in effect states that Greer conveys
nothing, and that she conveys everything. 
We cannot construe this deed as a matter of law.”[1]  But the deed itself contemplated that the
specific grant might not “actually and properly describe[]” the royalty
interests that Greer owned in Wharton County, and therefore, the deed expressly
provided that Greer was conveying all her royalty interests in Wharton County
“whether actually or properly described herein or not, and all of said lands
are covered and included herein as fully, in all respects, as if the same had
been actually and properly described herein.”

If the Court were to faithfully apply our
precedent C which is
considerable[2]
C it would give effect to what the
written words unmistakably say in this royalty deed.  This Court’s decision in Smith v. Allison[3]
does not support the result reached today. 
The general clause in Smith v. Allison purported to convey fee
simple title to all land adjoining the parcels specifically described, while
the specific descriptions as well as the habendum
clause and warranty clause limited the conveyance to minerals only.[4]  The general grant was therefore in conflict
with and repugnant to the specific grant, and we have long held that when that
occurs, the specific grant “will ordinarily control.”[5]

I have several questions for the Court:  Would the Court hold that the deed in this
case, including the general grant of all royalty interests in Wharton County,
is ambiguous if:

1)         a metes and bounds description of the land in which royalty
interests were conveyed had been used as the specific description, but the
description did not close;

 

2)         there were three tracts of land specifically described in
which royalty interests were granted, and all were effective, but there was one
other royalty interest in Wharton County, not specifically described, that
Greer owned;

 

3)         there were three tracts of land specifically described in
which royalty interests were granted, but one failed because Greer owned no
interest in that one tract;

 

4)         there were 100 tracts of land specifically described in
which royalty interests were granted, but one failed because Greer owned no
interest in that one tract; or

 

5)         there were 100 tracts of land specifically described in
which royalty interests were granted, and all were effective, but there were
three other royalty interests in Wharton County, not specifically described,
that Greer owned?

 

What principle of law does the Court announce
today that will give stability and predictability in construing deeds, wills,
oil and gas leases, liens, and deeds of trust? 
I can discern none.  We are told
only that when there is at least one specific grant and it fails, an
unambiguous general grant is rendered ambiguous.  Accordingly, there will be trials, sometimes
years after the grantors and grantees have passed on, to determine what a
conveyance meant.

We have received a number of amicus briefs in this
case.[6]  The Texas Oil & Gas Association, the
Texas Civil Justice League, the law firm of Scott, Douglass & McConnico, L.L.P., on behalf of its client titleX.com, and
David Kundysek tell us that the failure to give
effect to the plain meaning of the deed before us will lead to severe adverse
consequences including the failure of previously certain titles and security
interests and a proliferation of litigation that can only be resolved by a
trial to determine the meaning of “ambiguous” instruments.  I fear that these amici
are correct in their assessment of the damage today’s decision will inflict on
the stability and predictability of titles. 
Geographic grants are commonly used in large acquisitions as well as
small, personal transactions in which individuals cannot afford to have deed
records scoured and legal descriptions prepared and reviewed by lawyers.  But all lay people know what they mean when
they say, “I intend to convey all the royalty interests I own in Wharton
 County.”  Because the Court does not give effect to the
intent that is plainly and directly expressed in the deed before us, I dissent.

I

Our jurisprudence has given effect to geographic
grants for more than 100 years.  In 1890,
this Court construed a deed that granted all “‘land by me inherited
. . . from my deceased parents’” as well as “‘all right that I now
have . . . to any estate or property . . . in this county
or State.’”[7]  We concluded that the latter phrase “was
intended to enlarge, rather than to limit, the grant.  It was not intended as a more particular
designation of the property.”[8]  Similarly, this Court gave full effect to a
conveyance of all leases and royalties “‘located anywhere within the United
 States, most of which are located within the
States of New Mexico, Kansas, Oklahoma,
Louisiana and Texas.’”[9]  

As early as 1886, this Court held in Witt v.
Harlan that a general geographic grant would be given effect even though
there were other tracts specifically described.[10]  The general granting language of the deed
said “‘[d]o hereby bargain, sell, alien, and convey unto the said Harlan, his heirs
and assigns, forever, the entire and undivided one-half of all my lands in
Texas.’”[11]  The deed then said “‘[s]ome
of which are described as follows,’” and several tracts were specifically
described.[12]  Following the specific descriptions, the deed
said, “‘[a]s well as all my lands, or right to lands, of every kind and
description, whether legal or equitable, in the state of Texas,
or in any of the counties of said state.’”[13]  We held that the grantor’s one-half interest
in all lands, not just those specifically described, was conveyed.  We also held that the phrase following the
specific descriptions, when read in context, conveyed a one-half interest in
all lands, but not a 100 percent interest in all lands.[14]

The decision in Holloway’s Unknown Heirs v. Whatley[15]
perhaps gives us the most guidance in construing the deed at issue today.  Holloway had conveyed fee simple title in
three tracts in Liberty County,
reserving an undivided one-half mineral interest.  Subsequently, Holloway conveyed fee simple
title in three other tracts in Liberty
 County to another purchaser,
Baldwin, specifically describing the tracts. 
In the paragraph describing the third tract, there appeared a general
granting clause:

 

AThird tract being 30 acres a part of
the Moses Donohoe League, being all that part of said
league the title to which now stands in my name.  If there is any other land owned by me in
Liberty County, Texas, or any land, the title to which stands in my name, it is
hereby conveyed, the intention of this instrument being to convey all land
owned by me in said County.”[16]

 

After Holloway and Baldwin had died, a dispute
erupted over whether the one-half undivided mineral interest in the three
tracts that were the subject of Holloway’s first deed had passed to Baldwin
under the general granting clause of the second deed, even though neither the
mineral interest nor the three tracts in which Holloway had retained the
one-half mineral interest were specifically referenced in the second deed.  First, this Court rejected the argument that
a conveyance of “land” should exclude a previously severed mineral interest
unless the severed mineral estate was clearly identified as a mineral estate.[17]  

We then examined the general granting clause,
which said, “‘[i]f there is any other land owned by
me in Liberty, County, Texas, or any land, the title to which stands in my
name, it is hereby conveyed, the intention of this instrument being to convey
all land owned by me in said County.’”[18]  Greer’s deed in the case before us today
similarly says:  “In addition to
the above described lands, it is the intent of this instrument to convey, and
this conveyance does so include, all of grantors [sic] royalty and overriding
royalty interest in all oil, gas and other minerals in the above named county
or counties, whether actually or properly described herein or not, and all of
said lands are covered and included herein as fully, in all respects, as if the
same had been actually and properly described herein.”[19]

This Court held in Holloway that the general
grant conveyed the one-half mineral interest.[20]  We reasoned that the general geographic grant
“has no restrictive effect with respect to the quantum of land intended to be
conveyed.  Unless its purpose is to
enlarge the grant described in the immediately preceding language, it has no
purpose at all.”[21]  The same is true of Greer’s deed.  It says “[i]n
addition” to the specifically described property, she intended to convey all
her royalty interest in Wharton County.

It is also significant in analyzing Greer’s deed
that this Court said in Holloway that if there were any uncertainty in
what was to be conveyed, the general granting language rendered the meaning
certain:  

 

If
it should be admitted that there is any uncertainty inhering in any portion of the
language employed by Holloway to describe the land intended to be conveyed, the
language in its entirety is rendered certain by the concluding statement of the
description that it was the grantor’s intention to convey all of the land owned
by him in Liberty County.[22]

 

In Greer’s deed, she did not own what was specifically described,
but any uncertainty about her intent to convey all her royalty interest in Wharton
 County was removed by the
geographic grant.

In refusing to give effect to the geographic grant
in Greer’s deed, the Court relies heavily on Smith v. Allison.[23]  But that decision is consistent with Holloway,
even though the Holloway decision is not cited in Smith.  Smith presented the reverse of the
situation in Holloway because in Smith, all the specific grants
were limited to mineral interests while the general grant purported to convey
fee simple interests not only in the specifically described tracts, but in
adjoining tracts as well.  Holloway
stands for the well-settled proposition that a general grant of “land and
interests in land” includes mineral interests[24]
and that it can enlarge another specific grant of land and interests in
land.  But the reverse is not necessarily
true; a general grant of fee simple interests does not necessarily enlarge
specific grants of nothing more than mineral interests.  Smith stands for the proposition that
a deed which otherwise clearly indicates that only mineral interests are being
conveyed is rendered ambiguous by the inclusion of a general grant purporting to
convey fee simple interests.  We have no
such conflict in the Greer deed. 
Throughout, it consistently reflects Greer’s intent to convey only
royalty interests.

The Smith deed specifically described an
undivided one-half interest in the oil, gas, and other minerals in the
southeast 1/4th and the northwest 1/4th of Section 124, Block 25.[25]  In addition to the specific conveyances of
the mineral interests in these two parcels, the deed said

 

AThe parties however intend this deed to
include and the same is hereby made to cover and include not only the above
described land, but also any and all other land and interest in land owned or
claimed by the Grantor in said survey or surveys in which the above described
land is situated or in [sic] adjoining the above described land.  Should the foregoing particular description
for any reason prove incorrect or inadequate to cover the land intended to be
conveyed as above specified grantor agrees to execute such instrument or
instruments that may be necessary to correct such particular description.”[26]

 

The grantor also owned the northeast 1/4th of Section 124, as
well as all of Sections 123 and 145, which adjoined section 124, but none of
those interests were specifically described in the Smith deed.[27]

This Court held that the Smith deed was
ambiguous because the specific granting clause, the habendum
clause, and the warranty clause all referred only to mineral interests, while
the general granting language purported to convey not only mineral interests,
but fee simple title to the tracts specifically described as well as the fee
simple interest in tracts that were not specifically described.[28]  We said the deed was ambiguous for two
reasons:

 

(1)       To adopt the contention of the petitioners‑respondents,
Allison and others, the deed, even though they now only claim an undivided 2 of the minerals in the northeast 1/4
of Section 124, would convey the full fee simple title to Mrs. Neely.  

 

(2)       Even though the petitioners‑respondents, Allison and
others, assert they are not claiming any interest in Sections 123 and 145, the
fact remains that the general description does not limit the conveyance to
minerals in Section 124, but conveys the land. 
The granting clause, the habendum clause, and
the warranty clause refer only to minerals.[29]

 

We concluded that “the deed under question contains material
inconsistent provisions that render it uncertain as to the property conveyed.”[30]  This did not, however, constitute a holding
that a general grant renders a specific grant ambiguous when both deal with
estates of the same character. 
Importantly, the Smith decision discusses and approves of the
holding in Laucheimer v. Saunders.[31]  In Saunders, a deed of trust described
“certain parcels and tracts of land” and also had a general clause that said
“it was the intention of Saunders to convey all of his real estate in Coryell
county, whether described or not, except his homestead.”[32]  The court of appeals gave effect to this
geographic grant, and in Smith, this Court agreed “that there was no
repugnancy” between the specific and the general grants at issue in Laucheimer.[33]  We recognized “‘the grantor’s evident
intention to convey the particular tracts mentioned, and also all other
lands.’”[34]  The Smith decision then explained, once
again, the reason for the repugnancy in the Smith deed:  “In the present case we are unable to
reconcile recitations of a conveyance of fee simple title to land by general
description with a conveyance of only the minerals in the land particularly
described.”[35]  The rationale of Smith does not
support the Court’s conclusion today that when a specific grant of a mineral
interest fails because the owner did not own what she purported to own, the
general grant of a mineral interest is rendered ambiguous.

This Court explained in Sun Oil Co. v. Burns
when there is a conflict between general and specific grants and when there is
not.[36]  A conflict can exist when the “general
description and the particular description were repugnant when they were
applied to the ground.”[37]  But, we explained, there is no conflict
between the general and the specific when a conveyance clearly shows the
grantor intended to grant “not only the land particularly described, but also
other land coming within the terms of the general description”:

 

There is no occasion to determine which shall
prevail, the particular or the general description, unless there is a conflict
or repugnance.  And, of course, there is
no conflict or repugnance between the general and the particular description if
the deed or lease clearly shows, as does the lease here, the intention of the
grantor or lessor to grant or lease, not only the
land particularly described, but also other land coming within the terms of the
general description.[38]

 

An oil and gas form lease was at issue in Sun
Oil Co. v. Burns.  A typewritten
metes and bounds description of about 100 acres was included, followed by a
pre-printed general grant:

 

AIt being the intention, however, of lessor to include within the terms of this lease not only the
above described land, but also any and all other land owned or claimed by lessor in said survey or surveys in which the above
described land is situated or in adjoining surveys and adjoining the above
described land.”[39]

 

We held that this general grant included a 3.736-acre tract that
adjoined the specifically described acreage. 
In Sun Oil Co. v. Bennett, decided the same day, the same
printed-form lease contained a typewritten metes-and-bounds description of two
tracts, one 34 acres and the other 42 acres.[40]  Following the pre-printed language just
quoted above, typewritten language excepted from the general grant two other
tracts of 50 acres and 72 acres “‘now under lease.’”[41]  We held that the general grant included in
the lease a 2.59-acre tract adjoining the specifically described 42-acre tract.[42]

In Gulf Production Co. v. Spear, decided
two weeks after Burns and Bennett, the lease contained a
typewritten metes-and-bounds description of a four-sided tract said to contain
six acres, but the description omitted the course of the boundary on one side.[43]  The lessor argued
that the description did not include an adjoining 1.81-acre tract; the lessee
argued that it did, or else that the tract was embraced by this general
language:  “‘it being the intention to include
all land owned or claimed by Lessor in said survey or
surveys.’”[44]  We held that the specific description was
unclear, and that the general language was less clear than the general grants
in Burns and Bennett because it did not use their “not only . . .
but also” construction.[45]  But we nevertheless held that the general
grant included the tract adjoining the one specifically described in the lease.[46]


The Greer deed says “[i]n
addition to the above described lands, it is the intent of this instrument to
convey” all royalty interests in Wharton
 County.  That grant should be given effect, just as
this Court gave effect to the general grants in Holloway, Burns, Bennett,
and Spears, and other cases cited above.

The court of appeals concluded that Jones v. Colle[47]
controls this case.[48]  In Jones v. Colle,
Winifred Curry owned a 68.72-acre tract and a 28.84-acre mineral interest in
it.  He also owned an adjoining
49.34-acre tract and 20.7-acre mineral interest in that tract.  He accordingly owned a total of 49.54 mineral
acres in the two adjoining tracts.[49]  Jack Colle knew
about both tracts but prepared a receivership lease for court approval to
himself specifically describing “‘[a]n undivided 49.54 mineral acres out of
68.72 mineral acres’” without mentioning the 49.34-acre tract.[50]  The lease also contained the following
general grant:

 

AThis
lease also covers and includes, in addition to that above described, all land,
if any, contiguous or adjacent to or adjoining the land above described and (a)
owned or claimed by lessor by limitation,
prescription, possession, reversion or unrecorded instrument or (b) as to which
lessor has a preference right of acquisition.”[51]

 

The Court rejected Colle’s claim that
the lease covered Curry’s mineral interest in both tracts, stating that in Smith
v. Allison 

 

the court held that a Mother Hubbard clause would only serve
to cover property not described in the deed when that other property consists
of small unleased pieces or strips of land which may
exist without the knowledge of one or both of the parties.  We hold that is a correct statement of the
law which controls the situation in this case. 
Our holding in Smith precludes Colle
from using the Mother Hubbard clause to secure title to the minerals in the
49.34 acre adjoining tract, the existence of which was known to both parties at
the time the lease was executed.[52]

 

This characterization of Smith, which held only that a
particular deed before the Court was ambiguous, is plainly wrong.  Further, the rationale in Jones v. Colle was unnecessary, given that Colle
did not contend that Curry owned or claimed the second tract only by
limitation, prescription, possession, reversion, unrecorded instrument, or
preference right of acquisition.  The
general grant, read literally, did not lease any interest in the 49.34-acre
tract to Colle. 
With respect to the inaccuracy of the specific description, which
referred to a larger mineral interest in the 68.72-acre tract than Curry owned,
the Court seems to have been influenced by the fact that Colle
knew of both tracts when he prepared the lease and yet referred only to the
one.

Jones relied solely on Smith, and
while it misread that case, the result was not inconsistent with a correct
reading of Smith or any other decision of this Court.  Under these circumstances, dicta in Jones
cannot fairly be read to change the consistent rule applied by Texas
courts for a century.  In any event, this
Court construed the lease in Jones v. Colle as
a matter of law.  The Court did not find
the lease ambiguous.

* * * * * 

Because the
Court does not give effect to a direct, unambiguous grant, I dissent.

 

______________________________

Priscilla R. Owen

Justice

 

 

OPINION
DELIVERED:  December 31, 2004











[1] __ S.W.3d at __.





[2] Smith v. Westall, 13 S.W. 540 (Tex. 1890); Wit v. Harlan, 2 S.W. 41 (Tex. 1886); Holloway’s Unknown Heirs v. Whatley,
131 S.W.2d 89 (Tex. 1939); Sun Oil Co. v. Burns, 84 S.W.2d 442 (Tex. 1935); Tex. Consol. Oils v. Bartels, 270
S.W.2d 708 (Tex. Civ. App.BEastland 1954, writ ref’d).





[3] 301 S.W.2d 608 (Tex. 1957).





[4] Id. at 610.





[5] Burns, 84
S.W.2d at 446.





[6] Amicus briefs have been submitted by CSM Partners,
L.C. and others; David L. Kundysek, pro se; Mauritz & Couey, a Texas
Partnership; the law firm of Schoenbaum, Curphy & Scanlan, P.C.; the
Texas Civil Justice League; the Texas Oil & Gas Association; and the law
firm of Scott, Douglass & McConnico, L.L.P., on
behalf of titleX.com. 





[7] Smith, 13
S.W. at 540.





[8] Id.





[9] Tex. Consol. Oils v. Bartels, 270 S.W.2d 708, 710 (Tex. Civ.
App.BEastland 1954, writ ref’d).





[10] 2 S.W. 41, 41-42 (Tex. 1886).





[11] Id. at 41. 





[12] Id.





[13] Id.





[14] Id. at 42. 





[15] 131 S.W.2d 89 (Tex. 1939).





[16] Id. at 90 (emphasis in original).





[17] Id. at 91. 





[18] Id.





[19] Emphasis added.





[20] 131 S.W.2d at 92. 





[21] Id. at 91.





[22] Id. at 92.





[23] 301 S.W.2d 608 (Tex. 1956).





[24] 131 S.W.2d at 92 (holding that to construe the grant
of land and interests in land to exclude severed mineral interests Awould be tantamount to holding that a mineral estate,
when constructively severed from the surface by apt words of description, is
not ‘land.’  Such a holding would be in
the teeth of such cases as Texas Company v. Daugherty . . . .”).





[25] 301 S.W.2d at 610. 





[26] Id.





[27] Id. at 611. 





[28] Id. 





[29] Id.





[30] Id. at 612.





[31] 65 S.W. 500, 501 (Tex. Civ.
App. 1901, no writ).





[32] Id.





[33] Smith, 301
S.W.2d at 612.





[34] Id. (quoting Laucheimer,
65 S.W. at 501).





[35] Id. 





[36] 84 S.W.2d 442, 446-47 (Tex. 1935).





[37] Id. at 446.





[38] Id. at 447.





[39] Id. at 443. 





[40] 84 S.W.2d 447, 448 (Tex. 1935).





[41] Id.





[42] Id. at 449.





[43] 84 S.W.2d 452, 453-54 (Tex. 1935).





[44] Id.





[45] Id. at 454-55. 





[46] Id. at 457. 





[47] 727 S.W.2d 262 (Tex. 1987).





[48] 72 S.W.3d at 440.





[49] Jones, 727 S.W.2d at 262.





[50] Id. at 262-63.





[51] Id.





[52] Id. at 263.