**J. HIRAM MOORE, LTD., Petitioner,**

v.

**Mary GREER, Respondent.**

No. 02–0455.

Supreme Court of Texas.

Argued Oct. 29, 2003.

Concurring Opinion of Judge Hecht Dec. 31, 2004.

Dissenting Opinion by Judge Owen Dec. 31, 2004.

Decided May 20, 2005.

Emily Harrison Liljenwan, Schoenbaum Curphy & Scanlan, P.C., San Antonio, Amicus Curiae pro se.

George S. Christian, Austin, for Amicus Curiae Texas Civil Justice League.

Stuart C. Hollimon, Strasburger & Price, LLP, Dallas, for Amicus Curiae Texas Oil & Gas Association.

John A. "Jad" Davis Jr., Turner & Davis, Brandy R. Manning, Turner Davis & Gerald, P.C., Midland, Edwin P. Horner, Waco, for J. Hiram Moore, Ltd.

Randy M. Clapp, Duckett, Bouligny Collins, L.L.P., El Campo, for Mary Greer.

Craig W. Hathway, El Campo, for Amicus Curiae Mauritz & Couey.

David L. Kundysek, Dallas, Amicus Curiae pro se.

Terry E. Hogwood, Houston, for Amicus Curiae CSM Partners, L.C., M. L. Ruckman, L.C. and Sara Izod.

Jerry David Hall, Austin, for Amicus Curiae The Oil & Gas Clients of Scott, Douglass & McConnico, L.L.P. and TitleX.com.

James L. Gosdin, Houston, for Stewart Title Guaranty Company.

William B. Burford, Hinkle Hensley Shanor & Martin, L.L.P., Midland, Amicus Curiae pro se.

George A. Snell III, Amarillo, Amicus Curiae pro se.

Peter E. Hosey, Jackson Walker, L.L.P., San Antonio, Amicus Curiae pro se.

Chief Justice JEFFERSON delivered the opinion of the Court, in which Justice HECHT, Justice O'NEILL, Justice WAINWRIGHT, and Justice BRISTER joined.

We deny the motion for rehearing. We withdraw our opinion of December 31, 2004 and substitute the following in its place.

Mary Greer, her three sisters, and their widowed mother partitioned an 80–acre tract into four 20–acre tracts, designated 1 through 4. The land is all in the I. & G.N. R.R. Survey No. 6, A–232 ("the Railroad Survey"), in Wharton County. Each sister received title to the surface and minerals in one tract and one-fourth of a non-participating royalty interest in each of the other three tracts. Greer received Tract 3.

In 1988, the two sisters who owned Tracts 1 and 2 leased their minerals to Larry K. Childers. The SixS Frels # 1 Well was completed on an adjacent 106–acre tract in the Wm. Barnard Survey No. 14, A–801 ("the Barnard Survey"), and in 1991 that tract was pooled with Tracts 1 and 2 and four other tracts, at a specified horizon, to form the 350–acre SixS Frels Gas Unit. The following schematic drawing depicts Tracts 1–4 and the SixS Frels Gas Unit:

ø  Wm. Barnard Survey No. 14, A-801  ø

9 SixS Frels Gas Unit 9

106-acre Frels tract

( 9 survey boundary 9 )

| 20-acre | 20-acre | 20-acre | 20-acre |
|---------|---------|---------|---------|
| Tract 1 | Tract 2 | Tract 3 | Tract 4 |

4 tracts totaling 204 acres

ø  I. & G. N. R.R. Survey No. 6, A-232  ø

After 1991, Greer was thus entitled to receive 1/4 the royalty for each of Tracts 1 and 2 from the SixS Frels # 1 Well. There was no production—hence no royalty due Greer—with respect to Tracts 3 and 4.

In May 1997, Greer and her sister leased the minerals in Tracts 3 and 4, respectively, to J. Charles Holliman, Inc. The following September, Greer executed a royalty deed to Steger Energy Corp. At the time, there was still no production with respect to Tracts 3 and 4, and despite her lease to Holliman four months earlier, Greer was unaware of any drilling activity planned for the future. Greer's royalty deed to Steger consisted of nine numbered paragraphs in small print on a single page. The first paragraph conveyed all mineral royalties—

> that may be produced from the following described lands situated in the County of Wharton, State of Texas, to wit:
>
> All of that tract of land out of the AB 801 SEC 14/W M BARNARD # 14 SURVEY, Wharton County, Texas known as the MEDALLION OIL— SIXS FRELS UNIT. Grantor agrees to execute any supplemental instrument requested by Grantee for a more complete or accurate description of said land. Reference is made to this unit(s) for descriptive purposes only and shall not limit this conveyance to any particular depths or wellbores. In addition to the above described lands, it is the intent of this instrument to convey, and this conveyance does so include, all of grantors [sic] royalty and overriding royalty interest in all oil, gas and other minerals in the above named county or counties, whether actually or properly described herein or not, and all of said lands are covered and included herein as fully, in all respects, as if the same had been actually and properly described herein.

The first quoted sentence, a specific grant, describes land "known as the ... SIXS FRELS UNIT" in the Barnard Survey.

As already noted, the SixS Frels unit comprised tracts in both the Barnard Survey and the adjacent Railroad Survey, but Greer owned no interests in the Barnard Survey.[1] Greer's only royalty interests in the SixS Frels unit were in Tracts 1 and 2, both of which were in the Railroad Survey. But the fourth sentence, a general grant, refers to all Greer's interests in Wharton County, thus including not only her royalty interests in Tracts 1 and 2 in the SixS Frels Unit, but her interests in Tracts 3 and 4 as well.

During September and October, Steger acquired other royalty interests in Wharton County, and in December it sold twenty-five such interests, including the one acquired from Greer, to J. Hiram Moore, Ltd. for $360,000, which was market value. At that time, there was no production from Greer's Tract 3, nor was it pooled with any producing property.

Two years later, in December 1998, Kaiser–Francis Oil Co., successor to the working interest in Tract 3 that Greer conveyed to Holliman, pooled about 313 acres, including Tracts 1–4, at a different horizon than the SixS Frels Gas Unit, for production from the Greer # 1 Well which had been completed in Tract 3. Moore claimed all royalties with respect to the interests partitioned to Greer in Tracts 1–4, and when Greer disputed the claim, Kaiser–Francis suspended payments for those tracts.

Moore sued Greer to determine their respective rights, and Greer counter-claimed for declaratory relief as well as rescission and reformation based on mutual mistake and fraud. Moore moved for summary judgment, contending that it had acquired all of Greer's royalty interests in

---

1. We do not address whether, via pooling, Greer may have owned some interest in the Barnard Survey, as Moore stipulated below that "Greer owns no interest in the W.M. Barnard No. 14 Survey."

Wharton County by purchasing her royalty deed to Steger. Greer responded that she had intended to convey to Steger only her interests in the SixS Frels Unit in the Barnard Survey. In her supporting affidavit, she stated: "I did not intend to convey any other property. I specifically did not intend to convey any of my interest in the I&GNRR Co. Survey No. 6, Abstract 232 Wharton County, Texas." The trial court granted Moore's motion for summary judgment and severed Greer's claims for rescission and reformation. Those claims remain pending.

The court of appeals reversed the summary judgment with this explanation:

> Here the question is not whether the property [claimed by Moore] was described specifically enough [in Greer's royalty deed to Steger], but whether the "catch-all" language is sufficient to effect a conveyance of a significant property interest that Greer contends she had no intention of conveying by this deed. *Jones v. Colle*[, 727 S.W.2d 262 (Tex. 1987) ] sets forth the longstanding rule in Texas that a clause, like the one at issue here, can only convey small interests that are clearly contemplated within the more particularly described conveyance, and they are not effective to convey a significant property interest not adequately described in the deed or clearly contemplated by the language of the conveyance. Because the interest in Tract 3 was a substantial one, we hold that the rule disallowing such "cover-all" clauses to effectively convey a substantial property interest is the controlling law in this case.

72 S.W.3d 436, 441.

We granted the petition for review to determine the extent of the interest conveyed in the deed. 46 Tex. Sup.Ct. J. 793 (June 19, 2003).

■ We may construe the deed as a matter of law only if it is unambiguous. *See Westwind Exploration, Inc. v. Homestate Sav. Ass'n,* 696 S.W.2d 378, 381 (Tex. 1985). Citing *Holloway's Unknown Heirs v. Whatley,* 133 Tex. 608, 131 S.W.2d 89, 92 (Com.App.1939), Moore argues that the deed is unambiguous and that the general description establishes that the parties intended the deed to convey all of Greer's royalty interests in the county. Pointing to a line of cases in which our courts have recognized the validity of geographic grants, Moore contends that the general description falls into that category of conveyances and thus enlarges the specific grant. *See, e.g., Holloway's Unknown Heirs,* 131 S.W.2d at 90.

Greer, on the other hand, contends that she intended a specific conveyance only. She argues that the second grant does not enlarge the first. Citing *Jones v. Colle,* 727 S.W.2d 262 (Tex.1987), and *Smith v. Allison,* 157 Tex. 220, 301 S.W.2d 608 (1957), she argues, and the court of appeals agreed, that the language following the specific grant was intended to convey only small unleased strips of land adjacent to the described property. 72 S.W.3d at 441.

In *Smith v. Allison,* 157 Tex. 220, 301 S.W.2d 608, 611 (1956), we held that a deed was ambiguous when its general description conveyed a significantly greater interest (surface and minerals in land included within the specific description) than the specific grant (minerals only) and when the amount paid for that conveyance appeared to relate only to the mineral interest specifically described. Accordingly, we noted that "the deed under question contain[ed] material inconsistent provisions that render[ed] it uncertain as to the property conveyed." *Smith,* 301 S.W.2d at 612. We noted:

The deed grants 1/2 of the minerals in two specifically described sections, and although the granting clause, habendum clause, and warranty clause confine the conveyance to minerals, yet, the general description fails to limit the conveyance to minerals in the northeast 1/4 and Sections 123 and 145. These recitations clearly indicate an inconsistency between the general description and the descriptive matter identifying the particular tracts described and mentioned in the deed.

*Id.* Because the deed was ambiguous, it was correctly submitted to the jury, and we affirmed the judgment on that verdict. *Id.* at 615.

■ We face a similar problem here. The specific description in Greer's deed points to a survey in which Greer apparently owns no interest. The deed purports to convey "[a]ll of that tract of land out of the AB 801 SEC 14/W M BARNARD # 14 SURVEY,... known as the MEDALLION OIL—SIXS FRELS UNIT." As previously noted, Greer owns a 1/4 nonparticipating royalty interest in Tracts 1 and 2, which were pooled in the SixS Frels Unit; however, neither tract is in the W M Barnard Survey. Therefore, the specific description either does not describe any royalty interests owned by Greer, or it incorrectly describes her royalty interests in Tracts 1 and 2 that are part of the SixS Frels Unit by stating that they are in the W M Barnard Survey instead of the I. & G.N. R.R. Survey. The general description conveys "all of grantors [sic] royalty

and overriding royalty interest in all oil, gas and other minerals in the above named county or counties, whether actually or properly described herein or not, and all of said lands are covered and included herein as fully, in all respects, as if the same had been actually and properly described herein." The deed in effect states that Greer conveys nothing, and that she conveys everything. We cannot construe this deed as a matter of law.

Given the deed's ambiguity, the trial court erred in granting summary judgment. A jury should therefore hear evidence and determine the parties' intent. *See Columbia Gas Transmission Corp. v. New Ulm Gas*, 940 S.W.2d 587, 589 (Tex. 1996). Accordingly, we affirm the court of appeals' judgment [2] and remand to the trial court for further proceedings consistent with this opinion.

Justice HECHT filed a concurring opinion.

Justice OWEN filed a dissenting opinion, in which Justice Medina joined.

Justice GREEN and Justice JOHNSON did not participate in the decision.

Justice HECHT, concurring.

The dissent discerns no principle in the Court's decision, but there is one, and a very venerable one at that: hard cases make bad law.[1] The specific grant of royalty interests in Mary Greer's deed to Steger Energy Corp. described property in a survey she did not own. One might

**2.** In doing so, we express no opinion on the court of appeals' holding that "a clause, like the one at issue here, can only convey small interests that are clearly contemplated within the more particularly described conveyance, and they are not effective to convey a significant property interest not adequately described in the deed or clearly contemplated by the language of the conveyance." 72 S.W.3d at 441 (citing *Jones v. Colle*, 727 S.W.2d 262 (Tex.1987)).

**1.** *Northern Sec.Co. v. United States*, 193 U.S. 197, 400, 24 S.Ct. 436, 48 L.Ed. 679 (1903) (Holmes, J., dissenting) ("Great cases, like hard cases, make bad law."); *Robinson v. Central Tex. MHMR Ctr.*, 780 S.W.2d 169, 172 n. 1 (Tex.1989) (Hecht, J., dissenting).

suppose that the wrong survey was referenced by mistake, but no, Greer now tells us under oath: the specific grant conveyed nothing, which is "specifically" her word what she intended. Her purpose all along, if she can be believed, was to take Steger's money and convey nothing in return. Steger's successor in interest, J. Hiram Moore, Ltd., who bought royalty interests at market value, including Greer's deed, argues that by the literal terms of the general grant in that deed, it acquired all of Greer's royalty interests in Wharton County. Those interests substantially exceeded the interest she would have conveyed had the deed referenced the adjoining survey. If Moore is right, the record does not reflect whether it still paid market value for all of Greer's interests, as it says it did for every other interest it bought.

Moore argues that general grants must always be read literally, or land titles will become uncertain, and chaos will descend. Greer argues that general grants can never include more than small strips adjacent specifically described property, or unsophisticated, perhaps careless, grantors will be duped out of property they never intended to convey. We have squarely rejected Greer's argument in two cases,[2] and the argument is at least inconsistent with three others.[3] But we stopped short of endorsing Moore's argument in *Smith v. Allison.*[4] There the grantor specifically conveyed a mineral interest in two adjoining quarter–sections—320–acres then— added, with this general language:

> any and all other land and interest in land owned or claimed by the Grantor in said survey or surveys in which the above described land is situated or in [sic] adjoining the above described land.[5]

As it happened, the grantor owned the surface and minerals in 1,440 acres adjoining the two specifically described quarter-sections.[6] We held that the general grant did not unambiguously convey all of the grantor's interest in the 1,440 acres and affirmed a judgment on a jury verdict finding that it was not her intent to do so.[7]

The dissenting opinion argues that the general grant was not given effect in *Smith* because it literally included the surface estate as well as the minerals and was therefore repugnant to the rest of the deed that conveyed only mineral interests. The argument is certainly a reasonable one, but I doubt seriously that *Smith* would have been decided differently if the general grant had read, "any and all other mineral interest". The inclusion of the surface estate in the general grant was troublesome, but so, too, was the inclusion of the mineral interest in two-and-one-quarter sections that could have been described as easily as the two quarter-sections in which interests were specifically conveyed if the parties had ever had the remotest notion that the additional acreage was to be part of the transaction.

**2.** *Holloway's Unknown Heirs v. Whatley*, 133 Tex. 608, 131 S.W.2d 89, 90–92 (1939); *Sun Oil Co. v. Burns*, 125 Tex. 549, 84 S.W.2d 442, 445, 446–447 (1935) (quoting *Lauchheimer v. Saunders*, 27 Tex.Civ.App. 484, 65 S.W. 500, 501 (1901, no writ)).

**3.** *Sun Oil Co. v. Bennett*, 125 Tex. 540, 84 S.W.2d 447 (1935); *Gulf Prod. Co. v. Spear*, 125 Tex. 530, 84 S.W.2d 452 (1935); *Strong v. Garrett*, 148 Tex. 265, 224 S.W.2d 471 (1949); see also *Texas Consol. Oils v. Bartels*, 270

S.W.2d 708, 712 (Tex.Civ.App.-Eastland 1954, writ ref'd); *Smith v. Westall*, 76 Tex. 509, 13 S.W. 540 (1890); *Witt v. Harlan*, 66 Tex. 660, 2 S.W. 41 (1886).

**4.** 157 Tex. 220, 301 S.W.2d 608 (1956).

**5.** *Id.* at 610.

**6.** *Id.* at 611.

**7.** *Id.* at 613–615.

Situations in which general grants cannot be given effect have not arisen frequently. The Court in *Jones v. Colle*[8] thought that it presented such a situation, but I agree with the dissenting opinion that *Jones* misread *Smith* and that in any event the result in *Jones* is not inconsistent with our other decisions.[9] But while it only rarely happens that general grants cannot be given literal effect, I am not prepared in the unusual circumstances of this case to adopt a rigid rule that always construes general grants literally. The dissent poses five situations in which, I agree, a general grant should be construed according to its terms,[10] but it is just as easy to pose other circumstances in which it will seem highly unlikely that the parties fully intended what they actually said, and unjust to hold one of them to it. We should not use this case to make bad law. As long as a rule that gives effect to general grants with a few exceptions seems to manage the cases that arise, I would not change it simply because it could, possibly, prove unworkable. *Smith* did not destabilize land titles. Neither will this case.

With these few additional thoughts, I join in the Court's opinion.

Justice OWEN, joined by Justice MEDINA dissenting.

The granting clause of the royalty deed at issue says that it conveys:

all of the oil royalty, gas royalty, overriding royalty and royalty in casinghead gas, gasoline, and royalty in other minerals ... that may be produced from the following described lands situated in the County of Wharton, State of Texas, to wit:

All of that tract of land out of the AB 801 SEC 14/W M BARNARD #14 SURVEY, Wharton County, Texas known as the MEDALLION OIL— SIXS FRELS UNIT. Grantor agrees to execute any supplemental instrument requested by Grantee for a more complete or accurate description of said land. Reference is made to this unit(s) for descriptive purposes only and shall not limit this conveyance to any particular depths or wellbores. In addition to the above described lands, it is the intent of this instrument to convey, and this conveyance does so include, all of grantors [sic] royalty and overriding royalty interest in all oil, gas and other minerals in the above named county or counties, whether actually or properly described herein or not, and all of said lands are covered and included herein as fully, in all respects, as if the same had been actually and properly described herein.

This grant is unambiguous. It purports to grant Greer's interest in a specific section of a specific survey, and it also purports to grant all of Greer's royalty interests in Wharton County, whether described in the deed or not. As it turns out, Greer does not own what she purported to convey in the specific grant. But she does own royalty interests in Wharton County, and she unequivocally conveyed all those royalty interests in the general granting section of this deed. I would give effect to this grant unless and until the deed is reformed or rescinded.

The Court's reasoning for failing to enforce the deed as written boils down to this and only this: "The deed in effect states that Greer conveys nothing, and that she conveys everything. We cannot construe

---

**8.** 727 S.W.2d 262 (Tex.1987).

**9.** Post at 623.

**10.** Post at 617.

this deed as a matter of law." [1] But the deed itself contemplated that the specific grant might not "actually and properly describe[ ]" the royalty interests that Greer owned in Wharton County, and therefore, the deed expressly provided that Greer was conveying all her royalty interests in Wharton County "whether actually or properly described herein or not, and all of said lands are covered and included herein as fully, in all respects, as if the same had been actually and properly described herein."

If the Court were to faithfully apply our precedent which is considerable [2] it would give effect to what the written words unmistakably say in this royalty deed. This Court's decision in *Smith v. Allison*[3] does not support the result reached today. The general clause in *Smith v. Allison* purported to convey fee simple title to all land adjoining the parcels specifically described, while the specific descriptions as well as the habendum clause and warranty clause limited the conveyance to minerals only.[4] The general grant was therefore in conflict with and repugnant to the specific grant, and we have long held that when that occurs, the specific grant "will ordinarily control." [5]

I have several questions for the Court: Would the Court hold that the deed in this case, including the general grant of all royalty interests in Wharton County, is ambiguous if:

1) a metes and bounds description of the land in which royalty interests were conveyed had been used as the specific description, but the description did not close;

2) there were three tracts of land specifically described in which royalty interests were granted, and all were effective, but there was one other royalty interest in Wharton County, not specifically described, that Greer owned;

3) there were three tracts of land specifically described in which royalty interests were granted, but one failed because Greer owned no interest in that one tract;

4) there were 100 tracts of land specifically described in which royalty interests were granted, but one failed because Greer owned no interest in that one tract; or

5) there were 100 tracts of land specifically described in which royalty interests were granted, and all were effective, but there were three other royalty interests in Wharton County, not specifically described, that Greer owned?

What principle of law does the Court announce today that will give stability and predictability in construing deeds, wills, oil and gas leases, liens, and deeds of trust? I can discern none. We are told only that when there is at least one specific grant and it fails, an unambiguous general grant is rendered ambiguous. Accordingly, there will be trials, sometimes years after the grantors and grantees have passed on, to determine what a conveyance meant.

1. 172 S.W.3d at 614.

2. *Smith v. Westall*, 76 Tex. 509, 13 S.W. 540 (1890); *Witt v. Harlan*, 66 Tex. 660, 2 S.W. 41 (1886); *Holloway's Unknown Heirs v. Whatley*, 133 Tex. 608, 131 S.W.2d 89 (1939); *Sun Oil Co. v. Burns*, 125 Tex. 549, 84 S.W.2d 442 (1935); *Tex. Consol. Oils v. Bartels*, 270 S.W.2d 708 (Tex.Civ.App.-Eastland 1954, writ ref'd).

3. 157 Tex. 220, 301 S.W.2d 608 (1957).

4. *Id.* at 610.

5. *Burns*, 84 S.W.2d at 446.

We have received a number of amicus briefs in this case.[6] The Texas Oil & Gas Association, the Texas Civil Justice League, the law firm of Scott, Douglass & McConnico, L.L.P., on behalf of its client titleX.com, and David Kundysek tell us that the failure to give effect to the plain meaning of the deed before us will lead to severe adverse consequences including the failure of previously certain titles and security interests and a proliferation of litigation that can only be resolved by a trial to determine the meaning of "ambiguous" instruments. I fear that these amici are correct in their assessment of the damage today's decision will inflict on the stability and predictability of titles. Geographic grants are commonly used in large acquisitions as well as small, personal transactions in which individuals cannot afford to have deed records scoured and legal descriptions prepared and reviewed by lawyers. But all lay people know what they mean when they say, "I intend to convey all the royalty interests I own in Wharton County." Because the Court does not give effect to the intent that is plainly and directly expressed in the deed before us, I dissent.

## I

Our jurisprudence has given effect to geographic grants for more than 100 years. In 1890, this Court construed a deed that granted all " 'land by me inherited . . . from my deceased parents' " as well as " 'all right that I now have . . . to any estate or property . . . in this county or State.' "[7] We concluded that the latter phrase "was intended to enlarge, rather than to limit, the grant. It was not intended as a more particular designation of the property."[8] Similarly, this Court gave full effect to a conveyance of all leases and royalties " 'located anywhere within the United States, most of which are located within the States of New Mexico, Kansas, Oklahoma, Louisiana and Texas.' "[9]

As early as 1886, this Court held in *Witt v. Harlan* that a general geographic grant would be given effect even though there were other tracts specifically described.[10] The general granting language of the deed said " '[d]o hereby bargain, sell, alien, and convey unto the said Harlan, his heirs and assigns, forever, the entire and undivided one-half of all my lands in Texas.' "[11] The deed then said " '[s]ome of which are described as follows,' " and several tracts were specifically described.[12] Following the specific descriptions, the deed said, " '[a]s well as all my lands, or right to lands, of every kind and description, whether legal or equitable, in the state of Texas, or in any of the counties of said state.' "[13] We held that the grantor's one-half interest in all lands, not just those specifically described, was conveyed. We also held that the phrase following the specific descriptions, when read in context, conveyed a one-half interest in all lands,

---

**6.** Amicus briefs have been submitted by CSM Partners, L.C. and others; David L. Kundysek, pro se; Mauritz & Couey, a Texas Partnership; the law firm of Schoenbaum, Curphy & Scanlan, P.C.; the Texas Civil Justice League; the Texas Oil & Gas Association; and the law firm of Scott, Douglass & McConnico, L.L.P., on behalf of titleX.com.

**7.** *Smith,* 13 S.W. at 540.

**8.** *Id.*

**9.** *Tex. Consol. Oils v. Bartels,* 270 S.W.2d 708, 710 (Tex.Civ.App.-Eastland 1954, writ ref'd).

**10.** 66 Tex. 660, 2 S.W. 41, 41–42 (1886).

**11.** *Id.* at 41.

**12.** *Id.*

**13.** *Id.*

but not a 100 percent interest in all lands.[14]

The decision in *Holloway's Unknown Heirs v. Whatley*[15] perhaps gives us the most guidance in construing the deed at issue today. Holloway had conveyed fee simple title in three tracts in Liberty County, reserving an undivided one-half mineral interest. Subsequently, Holloway conveyed fee simple title in three other tracts in Liberty County to another purchaser, Baldwin, specifically describing the tracts. In the paragraph describing the third tract, there appeared a general granting clause:

> "Third tract being 30 acres a part of the Moses Donohoe League, being all that part of said league the title to which now stands in my name. *If there is any other land owned by me in Liberty County, Texas, or any land, the title to which stands in my name, it is hereby conveyed, the intention of this instrument being to convey all land owned by me in said County.*"[16]

After Holloway and Baldwin had died, a dispute erupted over whether the one-half undivided mineral interest in the three tracts that were the subject of Holloway's first deed had passed to Baldwin under the general granting clause of the second deed, even though neither the mineral interest nor the three tracts in which Holloway had retained the one-half mineral interest were specifically referenced in the second deed. First, this Court rejected the argument that a conveyance of "land" should exclude a previously severed mineral interest unless the severed mineral estate was clearly identified as a mineral estate.[17]

We then examined the general granting clause, which said, " '[i]f there is any other land owned by me in Liberty, County, Texas, or any land, the title to which stands in my name, it is hereby conveyed, the intention of this instrument being to convey all land owned by me in said County.' "[18] Greer's deed in the case before us today similarly says: "In *addition* to the above described lands, it is the intent of this instrument to convey, and this conveyance does so include, all of grantors [sic] royalty and overriding royalty interest in all oil, gas and other minerals in the above named county or counties, whether actually or properly described herein or not, and all of said lands are covered and included herein as fully, in all respects, as if the same had been actually and properly described herein."[19]

This Court held in *Holloway* that the general grant conveyed the one-half mineral interest.[20] We reasoned that the general geographic grant "has no restrictive effect with respect to the quantum of land intended to be conveyed. Unless its purpose is to enlarge the grant described in the immediately preceding language, it has no purpose at all."[21] The same is true of Greer's deed. It says "[i]n addition" to the specifically described property, she intended to convey all her royalty interest in Wharton County.

It is also significant in analyzing Greer's deed that this Court said in *Holloway* that if there were any uncertainty in what was

14. *Id.* at 42.

15. 133 Tex. 608, 131 S.W.2d 89 (1939).

16. *Id.* at 90 (emphasis in original).

17. *Id.* at 91.

18. *Id.*

19. Emphasis added.

20. 131 S.W.2d at 92.

21. *Id.* at 91.

to be conveyed, the general granting language rendered the meaning certain:

> If it should be admitted that there is any uncertainty inhering in any portion of the language employed by Holloway to describe the land intended to be conveyed, the language in its entirety is rendered certain by the concluding statement of the description that it was the grantor's intention to convey all of the land owned by him in Liberty County.[22]

In Greer's deed, she did not own what was specifically described, but any uncertainty about her intent to convey all her royalty interest in Wharton County was removed by the geographic grant.

In refusing to give effect to the geographic grant in Greer's deed, the Court relies heavily on *Smith v. Allison.*[23] But that decision is consistent with *Holloway,* even though the *Holloway* decision is not cited in *Smith. Smith* presented the reverse of the situation in *Holloway* because in *Smith,* all the specific grants were limited to mineral interests while the general grant purported to convey fee simple interests not only in the specifically described tracts, but in adjoining tracts as well. *Holloway* stands for the well-settled proposition that a general grant of "land and interests in land" includes mineral interests[24] and that it can enlarge another specific grant of land and interests in land. But the reverse is not necessarily true; a general grant of fee simple interests does not necessarily enlarge specific grants of nothing more than mineral interests.

*Smith* stands for the proposition that a deed which otherwise clearly indicates that only mineral interests are being conveyed is rendered ambiguous by the inclusion of a general grant purporting to convey fee simple interests. We have no such conflict in the Greer deed. Throughout, it consistently reflects Greer's intent to convey only royalty interests.

The *Smith* deed specifically described an undivided one-half interest in the oil, gas, and other minerals in the southeast 1/4th and the northwest 1/4th of Section 124, Block 25.[25] In addition to the specific conveyances of the mineral interests in these two parcels, the deed said

> "The parties however intend this deed to include and the same is hereby made to cover and include not only the above described land, but also any and all other land and interest in land owned or claimed by the Grantor in said survey or surveys in which the above described land is situated or in [sic] adjoining the above described land. Should the foregoing particular description for any reason prove incorrect or inadequate to cover the land intended to be conveyed as above specified grantor agrees to execute such instrument or instruments that may be necessary to correct such particular description."[26]

The grantor also owned the northeast 1/4th of Section 124, as well as all of Sections 123 and 145, which adjoined section 124, but none of those interests were specifically described in the *Smith* deed.[27]

---

**22.** *Id.* at 92.

**23.** 157 Tex. 220, 301 S.W.2d 608 (1956).

**24.** 131 S.W.2d at 92 (holding that to construe the grant of land and interests in land to exclude severed mineral interests "would be tantamount to holding that a mineral estate, when constructively severed from the surface by apt words of description, is not 'land.' Such a holding would be in the teeth of such cases as Texas Company v. Daugherty ....").

**25.** 301 S.W.2d at 610.

**26.** *Id.*

**27.** *Id.* at 611.

This Court held that the *Smith* deed was ambiguous because the specific granting clause, the habendum clause, and the warranty clause all referred only to mineral interests, while the general granting language purported to convey not only mineral interests, but fee simple title to the tracts specifically described as well as the fee simple interest in tracts that were not specifically described.[28] We said the deed was ambiguous for two reasons:

(1) To adopt the contention of the petitioners-respondents, Allison and others, the deed, even though they now only claim an undivided 1/2 of the minerals in the northeast 1/4 of Section 124, would convey the full fee simple title to Mrs. Neely.

(2) Even though the petitioners-respondents, Allison and others, assert they are not claiming any interest in Sections 123 and 145, the fact remains that the general description does not limit the conveyance to minerals in Section 124, but conveys the land. The granting clause, the habendum clause, and the warranty clause refer only to minerals.[29]

We concluded that "the deed under question contains material inconsistent provisions that render it uncertain as to the property conveyed."[30] This did not, however, constitute a holding that a general grant renders a specific grant ambiguous when both deal with estates of the same character. Importantly, the *Smith* decision discusses and approves of the holding

in *Lauchheimer v. Saunders*.[31] In *Saunders*, a deed of trust described "certain parcels and tracts of land" and also had a general clause that said "it was the intention of Saunders to convey all of his real estate in Coryell county, whether described or not, except his homestead."[32] The court of appeals gave effect to this geographic grant, and in *Smith*, this Court agreed "that there was no repugnancy" between the specific and the general grants at issue in *Lauchheimer*.[33] We recognized " 'the grantor's evident intention to convey the particular tracts mentioned, and also all other lands.' "[34] The *Smith* decision then explained, once again, the reason for the repugnancy in the *Smith* deed: "In the present case we are unable to reconcile recitations of a conveyance of fee simple title to land by general description with a conveyance of only the minerals in the land particularly described."[35] The rationale of *Smith* does not support the Court's conclusion today that when a specific grant of a mineral interest fails because the owner did not own what she purported to own, the general grant of a mineral interest is rendered ambiguous.

This Court explained in *Sun Oil Co. v. Burns* when there is a conflict between general and specific grants and when there is not.[36] A conflict can exist when the "general description and the particular description were repugnant when they were applied to the ground."[37] But, we explained, there is no conflict between the general and the specific when a convey-

28. *Id.*

29. *Id.*

30. *Id.* at 612.

31. 27 Tex.Civ.App. 484, 65 S.W. 500, 501 (1901, no writ).

32. *Id.*

33. *Smith,* 301 S.W.2d at 612.

34. *Id.* (quoting *Lauchheimer,* 65 S.W. at 501).

35. *Id.*

36. 125 Tex. 549, 84 S.W.2d 442, 446–47 (1935).

37. *Id.* at 446.

ance clearly shows the grantor intended to grant "not only the land particularly described, but also other land coming within the terms of the general description":

> There is no occasion to determine which shall prevail, the particular or the general description, unless there is a conflict or repugnance. And, of course, there is no conflict or repugnance between the general and the particular description if the deed or lease clearly shows, as does the lease here, the intention of the grantor or lessor to grant or lease, not only the land particularly described, but also other land coming within the terms of the general description.[38]

An oil and gas form lease was at issue in *Sun Oil Co. v. Burns*. A typewritten metes and bounds description of about 100 acres was included, followed by a pre-printed general grant:

> "It being the intention, however, of lessor to include within the terms of this lease not only the above described land, but also any and all other land owned or claimed by lessor in said survey or surveys in which the above described land is situated or in adjoining surveys and adjoining the above described land."[39]

We held that this general grant included a 3.736–acre tract that adjoined the specifically described acreage. In *Sun Oil Co. v. Bennett*, decided the same day, the same printed-form lease contained a typewritten metes-and-bounds description of two tracts, one 34 acres and the other 42 acres.[40] Following the pre-printed language just quoted above, typewritten language excepted from the general grant two other tracts of 50 acres and 72 acres " 'now under lease.' "[41] We held that the general grant included in the lease a 2.59–acre tract adjoining the specifically described 42–acre tract.[42]

In *Gulf Production Co. v. Spear*, decided two weeks after *Burns* and *Bennett*, the lease contained a typewritten metes-and-bounds description of a four-sided tract said to contain six acres, but the description omitted the course of the boundary on one side.[43] The lessor argued that the description did not include an adjoining 1.81–acre tract; the lessee argued that it did, or else that the tract was embraced by this general language: " 'it being the intention to include all land owned or claimed by Lessor in said survey or surveys.' "[44] We held that the specific description was unclear, and that the general language was less clear than the general grants in *Burns* and *Bennett* because it did not use their "not only ... but also" construction.[45] But we nevertheless held that the general grant included the tract adjoining the one specifically described in the lease.[46]

The Greer deed says "[i]n addition to the above described lands, it is the intent of this instrument to convey" all royalty interests in Wharton County. That grant should be given effect, just as this Court gave effect to the general grants in *Holloway*, *Burns*, *Bennett*, and *Spear's*, and other cases cited above.

---

**38.** *Id.* at 447.

**39.** *Id.* at 443.

**40.** 125 Tex. 540, 84 S.W.2d 447, 448 (1935).

**41.** *Id.*

**42.** *Id.* at 449.

**43.** 125 Tex. 530, 84 S.W.2d 452, 453–54 (1935).

**44.** *Id.*

**45.** *Id.* at 454–55.

**46.** *Id.* at 457.

The court of appeals concluded that *Jones v. Colle*[47] controls this case.[48] In *Jones v. Colle*, Winifred Curry owned a 68.72–acre tract and a 28.84–acre mineral interest in it. He also owned an adjoining 49.34–acre tract and 20.7–acre mineral interest in that tract. He accordingly owned a total of 49.54 mineral acres in the two adjoining tracts.[49] Jack Colle knew about both tracts but prepared a receivership lease for court approval to himself specifically describing " '[a]n undivided 49.54 mineral acres out of 68.72 mineral acres' " without mentioning the 49.34–acre tract.[50] The lease also contained the following general grant:

> "This lease also covers and includes, in addition to that above described, all land, if any, contiguous or adjacent to or adjoining the land above described and (a) owned or claimed by lessor by limitation, prescription, possession, reversion or unrecorded instrument or (b) as to which lessor has a preference right of acquisition." [51]

The Court rejected Colle's claim that the lease covered Curry's mineral interest in both tracts, stating that in *Smith v. Allison*

> the court held that a Mother Hubbard clause would only serve to cover property not described in the deed when that other property consists of small unleased pieces or strips of land which may exist without the knowledge of one or both of the parties. We hold that is a correct statement of the law which controls the situation in this case. Our holding in *Smith* precludes Colle from using the Mother Hubbard clause to secure title to the minerals in the 49.34

acre adjoining tract, the existence of which was known to both parties at the time the lease was executed.[52]

This characterization of *Smith*, which held only that a particular deed before the Court was ambiguous, is plainly wrong. Further, the rationale in *Jones v. Colle* was unnecessary, given that Colle did not contend that Curry owned or claimed the second tract only by limitation, prescription, possession, reversion, unrecorded instrument, or preference right of acquisition. The general grant, read literally, did not lease any interest in the 49.34–acre tract to Colle. With respect to the inaccuracy of the specific description, which referred to a larger mineral interest in the 68.72–acre tract than Curry owned, the Court seems to have been influenced by the fact that Colle knew of both tracts when he prepared the lease and yet referred only to the one.

*Jones* relied solely on *Smith*, and while it misread that case, the result was not inconsistent with a correct reading of *Smith* or any other decision of this Court. Under these circumstances, dicta in *Jones* cannot fairly be read to change the consistent rule applied by Texas courts for a century. In any event, this Court construed the lease in *Jones v. Colle* as a matter of law. The Court did not find the lease ambiguous.

\* \* \* \* \*

Because the Court does not give effect to a direct, unambiguous grant, I dissent.

**47.** 727 S.W.2d 262 (Tex.1987).

**48.** 72 S.W.3d at 440.

**49.** *Jones,* 727 S.W.2d at 262.

**50.** *Id.* at 262–63.

**51.** *Id.*

**52.** *Id.* at 263.