NUMBER 13-04-208-CV

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG

 

 

PAUL FREEMAN,                                                                            Appellant,

 

                                                             v.                                

 

STEPHENS PRODUCTION 

COMPANY, A DIVISION OF 

STEPHENS GROUP, INC., ET AL.,                                       Appellees.

 

      On
appeal from the 389th District Court of Hidalgo County, Texas.

 

 

                                          O
P I N I O N

 

                          Before
Justices Yañez, Castillo, and Garza 

                                         Opinion
by Justice Garza

 








In this appeal from the trial court=s final summary judgment, the parties dispute the
terms of a 1946 deed by which Paul Freeman conveyed title to certain property
to Kenneth R. Hixon and Mary Katherine Hixon (the AFreeman-Hixon Deed@).  Freeman=s grandson, also named Paul Freeman (APaul@), claims that the Freeman-Hixon Deed reserved to
his grandfather a one-half participating interest in and to all oil, gas, and
other minerals in or under the land conveyed by the deed.  Paul contends that he owns a one-third
interest in this reservation.  His claim
is opposed by Stephens Production Company, which asserts rights to certain
portions of the mineral estate through a mineral lease executed by the Hixons= successors in interest, some of who are intervenors
in this matter and also oppose Paul=s claim. 

Stephens filed suit for declaratory judgment against
Paul and four other defendants, asking the trial court to declare that the
disputed reservation in the Freeman-Hixon Deed only affected a portion of the
conveyed land known as Lot 288.[1]  Paul counterclaimed, seeking a declaration
that the reservation was not limited to Lot 288 but affected the entire
property conveyed by the deed. 
Subsequently, the lessors of Stephens=
mineral lease filed a plea in intervention, seeking a declaration that the
Freeman-Hixon Deed did not reserve any mineral interest in the land covered by
their mineral lease with Stephens (Athe Closner Lots@) and
to establish their ownership of the mineral estate of the Closner Lots.[2]  








Stephens, Paul, and the intervenors each filed
traditional motions for summary judgment, arguing that the Freeman-Hixon Deed
was unambiguous and supported their respective positions.  In addition, Stephens and the intervenors
argued that Paul=s claim for declaratory relief was barred by res
judicata.  In response, Paul argued that
the claims asserted by Stephens and the intervenors were barred by estoppel by
deed and limitations.  Before the trial
court ruled on their motion, the intervenors settled their claims with all
defendants other than Paul, and all claims between these defendants, the
intervenors, and Stephens were dismissed with prejudice.  The trial court then entered a final summary
judgment for Stephens and the intervenors against Paul, who now appeals by four
issues.  Because genuine issues of
material fact remain unresolved, we reverse the judgment of the trial court and
remand for further proceedings consistent with this opinion.[3]  

I.  

In his first issue, Paul contends that the trial
court erred as a matter of law by interpreting the reservation clause to apply
only to Lot 288.  Paul contends that the
following language from the deed unambiguously reserves an undivided one-half
interest in the mineral estate of all lots conveyed by the deed:

I, Paul Freeman, . . . do Grant, Sell and Convey,
unto the said Kenneth R. Hixon and Mary Katherine Hixon of the County of
Hidalgo of Texas all that certain lot, tract or piece or parcel of land lying
and being situated in Hidalgo County, Texas, to-wit:

 

All of Lot 1, Block 15; Lot 2, Block 15; The West
17.51 acres of Lot 3, Block 15; All of Lot 10, Block 15; All of Lot 9, Block
15; All of Lot 11, Block 15; All of Lot 12, Block 15; out of the Closner
Subdivision of Porciones 71 and 72, also known as the San Juan Tract, Hidalgo
County, Texas; EXCEPT such minerals as Grantor does not own; AND ALL of Lot No.
288 of the Kelly-Pharr Subdivision of Porciones 69 and 70, Hidalgo County,
Texas; EXCEPT that there is reserved in Grantor an undivided one-half participating
interest in and to all of the oil, gas or other minerals in or under said tract
of land . . . .                    








If the language of a deed is unambiguous, the court=s primary duty is to ascertain the intent of the
parties from the language of the deed by using the Afour corners@ rule.  French
v. Chevron U.S.A., 896 S.W.2d 795, 796 (Tex. 1995).  Whether a written instrument is ambiguous is
a question of law for the court.  Lopez
v. Munoz, Hockema & Reed, 22 S.W.3d 857, 861 (Tex. 2000).  A written instrument is ambiguous if its
meaning is uncertain and doubtful or it is reasonably susceptible to more than
one meaning.  Towers of Tex., Inc. v. J
& J Systems, Inc., 834 S.W.2d 1, 2 (Tex. 1992).  Such is the case here.  

No single reasonable meaning clearly emerges from
the language of the instrument.  To the
contrary, we are equally uncertain and doubtful of the opposite interpretations
advanced by the parties.  The reservation
speaks of its subject as a Atract.@  Use of this
singular noun indicates that the reservation applies only to Lot 288 and not to
the other lots.  Nevertheless, the first
clause of the grant also speaks of a Alot, tract or piece or parcel of land,@ even though the deed conveys eight different
lots.  Thus, the reservation=s use of the singular noun Atract@ to describe its subject is consistent with the deed=s use of the singular noun Atract@ to describe multiple lots and, in fact, the entire
conveyance.  This indicates that the
reservation applies to all lots.  Still,
the deed refers to the Closner Lots collectively as the ASan Juan Tract@ and then proceeds to list Lot 288 separately,
indicating that the Closner Lots and Lot 288 are treated as two different tracts.  The reservation would then apply only to the
second tract, Lot 288.  Further
complicating matters is the reservation=s location in a clause rather than a separate
sentence.  It thus appears to modify only
the noun immediately preceding it, Lot 288. 
Given the foregoing considerations, this Court can only speculate as to
the effect of reservation.  We are
uncertain and doubtful of both interpretations advanced by the parties.            








Because the deed is ambiguous, the trial court erred
by granting summary judgment based on its interpretation of the deed.  A jury should hear evidence and determine the
parties= intent.  See
Columbia Gas Transmission Corp. v. New Ulm Gas, 940 S.W.2d 587, 589 (Tex.
1996); see also J. Hiram Moore, Ltd. v. Greer, No. 02‑0455, 2005
Tex. LEXIS 428, *10 (May 20, 2005) (publication pending).  Paul=s first issue is sustained in part and overruled in
part.

II.

In his second issue, Paul contends that the trial
court erred by denying his motion for summary judgment based on estoppel by
deed.  As this Court recently noted in Sauceda
v. Kerlin, AEstoppel by deed stands for the general proposition
that >all parties to a deed are bound by the recitals
therein, which operate as an estoppel, working on the interest in the land if
it be a deed of conveyance, and binding both parties and privies; privies in
blood, privies in estate, and privies in law.=@ Sauceda v. Kerlin, No. 13‑01‑62‑CV,
2005 Tex. App. LEXIS 4441, *37 (Corpus Christi, June 9, 2005, no pet. h.) (quoting
Wallace v. Pruitt, 20 S.W. 728, 728B29 (Tex. Civ. App.CHouston
1892, no writ)).

In support of his motion for summary judgment, Paul
produced evidence that Kenneth R. Hixon and other subsequent interest holders
executed multiple conveyances, as well as an oil, gas, and mineral lease,
acknowledging that the mineral reservation covered all land conveyed by the
Freeman-Hixon Deed, including the Closner Lots. 
Based on this evidence, Paul argues that the doctrine of estoppel by
deed prevents Stephens and the intervenors from taking a position contrary to
that of Hixon and their other predecessors in interest.








Stephens and the intervenors, in turn, argue that
estoppel by deed cannot be applied against grantees but only against
grantors.  They further contend that Paul
cannot use estoppel by deed because he was not a party to the instruments upon
which he relies.  Finally, they maintain
that the instruments produced as evidence by Paul conveyed interests in Lot
288, as well as the Closner Lots, and thus their references to the prior
mineral reservation simply placed later grantees on notice of the reservation=s existence as to certain acreage out of the land
conveyed (i.e., Lot 288).

We disagree with two of these contentions.  First, estoppel by deed can be applied
against grantors and grantees alike, along with their privies.  See id. at *39B40.  Second,
this Court is aware of no requirement that the litigant invoking estoppel by
deed be a party to the deed.  Although
the party against whom estoppel is sought must be a party or a privy, to this
Court=s knowledge, there is no corresponding requirement
for the party invoking estoppel.  No
cases imposing such a requirement have been cited by Stephens or the
intervenors.  








We turn to the evidence produced in support of Paul=s motion.  As
argued by Stephens and the intervenors, the instruments relied upon by Paul
convey interests in both the Closner Lots and Lot 288.  Because there is no dispute that Lot 288 is
subject to the reservation of the Freeman-Hixon Deed, the acknowledgment of the
reservation in these instruments is not necessarily an acknowledgment that the
reservation applies to the Closner Lots. 
In fact, two of the instruments use the same murky language and format
as the Freeman-Hixon Deed, making this Court no more certain of their meaning
than that of the Freeman-Hixon Deed.[4]  








However, one of the instruments uses a different
format and provides some evidence that the reservation applies to the Closner
Lots.  This document, a special warranty
deed, was executed on September 18, 2001 between intervenor M.G. and B.B. Smith
Partners, Ltd. and Keller Real Estate Investments, Inc. (the ASmith-Keller Deed@).  It specifically conveys 66.23 acres out of
Lots 1, 2, 3, and 10, Block 15 of the Closner Subdivision, which it refers to
as ATract 1.@  The
Smith-Keller Deed states that Tract 1 is subject to the undivided one-half
reservation provided for by the Freeman-Hixon Deed.  Although the Smith-Keller Deed thus appears
to be conclusive proof that the reservation applies to the Closner Lots, its
evidentiary value is belied by a second conveyance made within the same
deed.  Along with Tract 1, the Smith-Keller
Deed also conveys land referred to as ATract 2,@ which is comprised of 239.01 acres out of Lots 2,
3, 8, 9, 10, 11, 12, and 13, Block 15 of the Closner Subdivision and Lots 287,
288, 289, and 290 of the Kelly-Pharr Subdivision.  Notably, the deed does not list the
reservation provided for by the Freeman-Hixon Deed as one of the 47
reservations applicable to Tract 2.  This
is especially noteworthy because Tract 2 includes not only portions of the
Closner Lots but also Lot 288.  Tract 2
also includes Lots 2, 3, and 10, portions of which are included in Tract 1 and
expressly made subject to the reservation of the Freeman-Hixon Deed. Further
diminishing the evidentiary value of the Smith-Keller Deed is the exclusion of
Lots 9, 11, and 12 of the Closner Subdivision from Tract 1.  These lots are included in Tract 2, which is
not expressly subject to the reservation of the Freeman-Hixon Deed.  In sum, the Smith-Keller Deed is some
evidence that the reservation extends to the Closner Lots, but it is
inconsistent and therefore insufficient to eliminate all genuine issues of
material fact.  See Tex. R. Civ. P. 166a(c).  

The final instrument submitted by Paul is a November
19, 1975 oil, gas, and mineral lease executed by Morris Granville Smith and
Barbara Smith in favor of Paul S. Freeman, Paul=s
grandfather.  The lease grants 

All our mineral interest in Lots One (1), Two (2),
Three (3), Eight (8), Nine (9), Ten (10), Eleven (11), Twelve (12) and Thirteen
(13) . . . in Block Fifteen (15), John H. Closner, et al Subdivision, Hidalgo
County, Texas; and Lot Two Hundred Eighty-Eight (288), out of the Kelly-Pharr
Subdivision, Hidalgo County, Texas.

 

The lease provides a Apooling@ area of 320 acres and then states that Afor purposes of calculating the rental payments
hereinafter provided for, said land is estimated to comprise 160 acres, whether
it actually comprises more or less.@  According to
Paul, the difference between the 320-acre pooling area and 160-acre estimation
of the land proves that the Smiths only owned one-half of the mineral interest
in the land, which is the same land conveyed by the Freeman-Hixon Deed.  Paul argues that the Smiths thus acknowledged
that the reservation of the Freeman-Hixon Deed extends to the Closner
Lots.  








Although the mineral lease is some evidence to
support Paul=s contention, it fails to eliminate all genuine
issues of material fact.  See id.  The exact acreage of the land covered by the
mineral lease is not stated anywhere in the lease.  Paul assumes that the acreage is 320, but
this amount is derived from the pooling provision, not from any statement
regarding the exact acreage of the land. 
If the correct acreage of the land were 160 acres, Paul=s theory would fail because the mineral interest
conveyed would be 100% of what the Smiths owned.  Without parol evidence, it is impossible to
know with any certainty whether the actual acreage is 160, 320, or some other
amount.  Accordingly, Paul did not
establish his entitlement to judgment as a matter of law on his defense of
estoppel by deed.  Paul=s second issue is therefore overruled.         

III.        

In his third issue, Paul contends that the trial
court erred by granting intervenors= motion for summary judgment based on res
judicata.  The trial court=s judgment specifies that its decision was based on
its interpretation of the Freeman-Hixon Deed, not on res judicata.  The judgment states that the Freeman-Hixon
Deed did not reserve any mineral interest in the Closner Lots to Paul Freeman
Senior.  Accordingly, this Court need not
consider whether the judgment could be upheld based on res judicata.  See Tex.
R. App. P. 47.1; State Farm Fire & Cas. Co. v. S.S., 858
S.W.2d 374, 380 (Tex. 1993).  Paul=s third issue is overruled.

IV.  








In his fourth issue, Paul contends that the trial
court erred by failing to grant his motion for summary judgment against the
intervenors based on limitations. 
According to Paul, the intervenors or their predecessors-in-title have
been on notice of his grandfather=s claim of ownership of the minerals since at least
1949 and are therefore barred by the statute of limitations from disputing
ownership.  We construe this as a claim
of adverse possession, as the only authority relied upon by Paul is Natural
Gas Pipeline Co. of Am. v. Pool, 124 S.W.3d 188, 192B93 (Tex. 2003), a case involving a claim of adverse
possession of a mineral estate.  Paul=s motion for summary judgment alleges that his
grandfather Along continued possession and exercise of dominion
as an owner of one-half of the mineral in the subject lands@; however, the evidence attached to the motion is
insufficient evidence to prove this assertion.[5]  Because actual possession of the minerals
must occur, see id., the trial court did not err by denying Paul=s motion for summary judgment based on adverse
possession.  Paul=s fourth issue is overruled.

V.

As it relates to the claims between Stephens, Paul,
and the intervenors, the judgment of the trial court is reversed and the case
is remanded for further proceedings consistent with this opinion.  The remainder of the judgment, specifically,
the dismissal with prejudice of the claims between Stephens, the other
defendants, and intervenors, has not been challenged in this appeal and is
therefore affirmed.  See Tex. R. App. P. 44.1(b).   

 

 

_______________________

DORI CONTRERAS GARZA,

Justice

 

Opinion delivered and filed 

this the 18th day of August, 2005.

 











[1] 
The other defendants are Hemus, Ltd., which was non-suited; Paula
Kendall Taylor, individually and as independent executrix of the Estate of Byrd
Freeman Kendall, deceased; Clemmie Dora Freeman; and Charles Macon Freeman.   





[2] 
The intervenors are Charlie A. Hudson; Gregory T. Smith; Bruce Ihrig;
Charlie Hudson, Jr.; David Drinkard; Meredith Land & Minerals Company;
Winne Land & Minerals, Inc.; and M.G. and B.B. Smith Partners, Ltd.  





[3]  The well-settled standard of review for
summary judgments is concisely stated in Fiallos v. Pagan‑Lewis
Motors, Inc., 147 S.W.3d 578, 582 (Tex. App.CCorpus Christi 2004, pet.
denied).    





[4]  These instruments are (1) a warranty deed from
Kenneth Hixon and Katherine Hixon to Morris Granville Smith recorded on
December 10, 1947 and (2) a special warranty deed from Morris Granville Smith
and his wife, Barbara Smith, to intervenor M.G. and B.B. Partners, Ltd., which
is dated August 29, 1997.





[5] 
Attached to the motion are an inventory of the estate of Pat Freeman and
an affidavit by Paul, which discusses Paul=s knowledge regarding the inventory.  The evidence does not prove or purport to
prove that either Paul, his grandfather, or any of Paul=s other predecessors-in-interest
actually possessed the mineral estate for the requisite statutory period of
time.